**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARC GILL, | : | |
| | : | Civil Action No. 10-4622 (PGS) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**SHERIDAN**, District Judge:

Presently before the Court is the motion of Marc Gill ("Petitioner" or "Mr. Gill") brought pursuant to 28 U.S.C. § 2255.  (ECF No. 6.)  Respondent, United States of America ("Respondent"), filed an Answer (ECF No. 9) and on February 28, 2014, this Court conducted an evidentiary hearing.   For the following reasons, the Court grants Petitioner's motion in part.

**I. BACKGROUND**

On March 5, 2009, Petitioner was charged in a three-count Indictment with distribution of more than 5 grams of crack cocaine (Counts One and Two) and distribution of more than 50 grams of crack cocaine (Count Three), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (Resp't's Answer ¶ 2; Ex. B, Plea Agreement.)  On August 14, 2009, Petitioner pled guilty to Count Three of the Indictment and on May 14, 2010, he was sentenced with a criminal history category of VI and an offense level of 34.  (Sentencing Tr. 2:19-24, May 14, 2010, Crim. Action No. 09-151, ECF No. 35.)  The guidelines suggest a sentence of between 262 and 327 months.  (*Id.*)  Judge Brown sentenced Mr. Gill to 162 months of imprisonment with five years of supervised release.  (*Id.* at 22:5-9.)   During sentencing, Judge Brown found that Petitioner was a career offender under

the guidelines and also took into consideration the then-pending changes to the treatment of crack cocaine versus powder cocaine.   (*Id.* at 21:5-12.)    On September 10, 2010, Petitioner filed his initial § 2255 Motion (ECF No. 1) and on October 23, 2010, Petitioner filed an Amended Motion (ECF No. 6).   In his Amended Motion, Petitioner raises the following grounds for relief:

> 1. Ineffective assistance of counsel based on trial counsel's failure to file an appeal; failure to properly argue a downward departure based on the disparity between state and federal penalties for his crimes; and
>
> 2. The sentencing disparity between crack and cocaine is unconstitutional.[1]

(Am. Pet. 7-23.)

On May 21, 2013, Petitioner filed a motion to reduce his sentence under 18 U.S.C. § 3582, which this Court denied.   *U.S. v. Gill*, Crim. Action No. 09-151, ECF Nos. 23-24.   On August 16, 2013, Petitioner filed an appeal of that denial (Crim. Action No. 09-151, ECF No. 30), which the Third Circuit dismissed for lack of jurisdiction, while also noting that Petitioner would not have been entitled to any sentence reduction due to the change in base offense levels for crack cocaine because his sentence was based on the career offender guideline range.   *U.S. v. Gill*, 2014 WL 265483, at * 2 n.1 (3d Cir. Jan. 24, 2014).

As noted above, on February 28, 2014, the Court held an evidentiary hearing to determine whether Petitioner's trial counsel adequately discussed Petitioner's right to appeal, and if so, whether Petitioner's counsel was instructed by Petitioner to file the appeal.

At the hearing, there was testimony from Petitioner, Petitioner's trial counsel, Mr. Thomas Ashley, and Petitioner's mother, Linda Gill.   Mr. Ashley testified that he did not recall whether he instructed Petitioner about his right to appeal, or if Petitioner asked him to appeal.   Mr. Ashley's

---

[1]   During the evidentiary hearing, Petitioner conceded that this claim is without merit.   (Hr'g Tr. 18:5-7.

testimony was as follows:

> Q.      After sentencing, was it discussed or did Mr. Gill at any time ask you to appeal the sentencing Court's determination of his criminal history category?
>
> A.      I don't recall Mr. Gill ever asking me to appeal any aspect of the case. Including his criminal history category.
>
> ***
>
> Q.      All right. And is it your testimony that you don't recall specifically whether there was a conversation or a wish expressed by Mr. Gill to appeal any part of his sentence?
>
> A.      That's what I said, I don't recall. I'm not saying that he didn't say it, I just can't recall, it was four years ago and I have no recollection. Although if someone were to ask me to appeal, I can't fathom why I wouldn't do it.
>
> Q.      That's my next question. If someone had asked you to appeal, would you have indeed gone forward with that?
>
> A.      Yes.

(Hr'g Tr. 4:10-14; 5:9-18.)

Petitioner testified that while he and Mr. Ashley were still in the courtroom after the sentencing, Petitioner "asked him (Ashley) was he going to appeal the sentence or my criminal history, and he (Ashley) said he would."  (*Id.* at 13:6-8.)   Moreover, Petitioner had no further communication with Mr. Ashley ("After I got sentenced I ain't heard from him no more after that.") (*Id.* at 13:17-18.)   Since Mr. Gill did not hear from Mr. Ashley, he discussed the appeal with another attorney; but then filed his own appeal.   (*Id.* at 15:9-22.)

## II. DISCUSSION

### A. Legal Standard

As noted above, this is a habeas corpus petition.   Section § 2255 provides the standard which the Court must employ in evaluating such a claim.   That is:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure."   *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).

### B. Analysis

The Sixth Amendment[2]  guarantees criminal defendants the right to effective assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In order to succeed on a claim of ineffective counsel, Petitioner must satisfy the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   First, Petitioner must show that counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors

---

[2]  The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."   U.S. Const. VI.

so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id.* at 687–688. Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...." *Harrington v. Richter*, —– U.S. ——, ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674) (internal citations omitted). In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693.

### 1. Failure to File Direct Appeal

When looking specifically at the filing of appeals, "a lawyer who disregards specific

instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.* "[B]y instructing counsel to perfect an appeal, [a defendant] objectively indicated his intent to appeal and was entitled to a new appeal without any further showing." *Id.* at 485, 120 S.Ct. 1029 (citing *Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)); *Harrington v. Gillis*, 456 F.3d 118, 132 (3d Cir. 2006); *Velazquez v. Grace*, 277 F. App'x 258, 261 (3d Cir. 2008) ("Though it is tempting to do so, we should not inquire into the merit of a prospective appeal. The loss of a requested direct appeal is prejudice enough (*i.e.*, sufficient to satisfy *Strickland* as construed by *Flores-Ortega*).")

In this case, the plea agreement entered into by the parties included an appeal waiver that stated as follows:

> Defendant knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. Section 3742 or a motion under 28 U.S.C. Section 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the total Guidelines offense level of 34, if Marc Gill is determined to be a Career Offender, or 27, if he is not determined to be a Career Offender."

(Resp't's Answer, Ex. B 7.) However, said waiver expressly excluded an appeal of Petitioner's criminal history category under 18 U.S.C. § 3742. (*Id.* at Ex. A, ¶ 9) ("The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category.")

In this case, both Petitioner and his mother testified that trial counsel informed them that he would file an appeal. Though trial counsel testified that it is his standard practice to file an appeal

when someone requests that he do so, he cannot recall whether Petitioner and his family requested such.   Based on the cumulative testimony, the Court finds that counsel's performance fell below objectively reasonable standards.   *Flores–Ortega*, 528 U.S. at 477.   Since the loss of a requested direct appeal is prejudice enough sufficient to satisfy the *Strickland* standard, *see Velazquez*, 277 F. App'x at 261, the Court will grant Petitioner's motion as it relates to the failure to file an appeal claim.   The remedy for a violation of the right to effective assistance of counsel with respect to the filing of an appeal is the reinstatement of the defendant's appellate rights.   *Solis v. United States*, 252 F.3d 289, 294–95 (3d Cir. 2001).   As such, Petitioner is entitled to a *nunc pro tunc* direct appeal on the issue of his criminal history category computation.

## 2. State/Federal Sentencing Disparity

Petitioner argues that his trial counsel was ineffective when he failed to argue for a downward departure based on the disparity in Petitioner's sentence due to the Government's decision to prosecute the case in federal rather than state court.

This claim is without merit since it has specifically been rejected by the Third Circuit. "Reducing a federal prisoner's sentence to accord with that of a similarly situated state convict may decrease one sentencing disparity but simultaneously enlarges another: that between the federal convict and all similarly situated federal convicts. Because penalties vary from state to state, sentence reductions to approach state penalties similarly vary with the state in which the federal sentencing court sits, unjustifiably creating disparities among federal convicts." *U.S. v. Begin*, 696 F.3d 405, 412 (3d Cir. 2012) (internal citations omitted).   "Adjusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage." *Id.*   Since this argument has been rejected by the Third

Circuit, Petitioner clearly cannot meet either prong of *Strickland* and his ineffective assistance of counsel claim regarding sentence disparity is denied.

## III. CERTIFICATE OF APPEALIBILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, with regard to the ground on which relief is being denied, Petitioner failed to make a substantial showing that his constitutional rights have been violated. As such, no reasonable jurists would disagree with this Court's resolution of those claims and no certificate of appealability will issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion is GRANTED as it relates to trial counsel's failure to file a direct appeal. Petitioner is granted leave to file and serve a notice of appeal *nunc pro tunc*. Petitioner's motion is DENIED as it relates to all other claims. An appropriate order follows.

Dated:  May 16, 2014

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

8